IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


JOHANNA BETH VAN ABKOUDE,                3:11-CV-00503-BR

          Plaintiff,                     OPINION AND ORDER

v.

MICHAEL J. ASTRUE, Commissioner
of Social Security,

          Defendant.


RICHARD A. SLY
290 S.W. Oak St, Suite 102
Portland, OR 97204
(503) 224-0436

LINDA ZISKIN
P.O. Box 2237
Lake Oswego, OR 97035
(503) 889-0472

          Attorneys for Plaintiff

S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

1  - OPINION AND ORDER

**DAVID MORADO**
Regional Chief Counsel
**KATHRYN A. MILLER**
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 MS/221A
Seattle, WA  98104-7075
(206) 615-2531

          Attorneys for Defendant


**BROWN, Judge.**

     Plaintiff Johanna Beth Van Abkoude seeks judicial review
of the Commissioner of Social Security's final decision denying
her 2007 application for Disability Insurance Benefits (DIB)
pursuant to Title II of the Social Security Act (SSA), 42 U.S.C.
§§ 401-34, and Supplemental Security Income (SSI) pursuant to
Title XVI of the SSA, 42 U.S.C. §§ 1381-83(f).

     This Court has jurisdiction to review the Commissioner's
final decision pursuant to 42 U.S.C. § 405(g).  Because the
parties agree a final decision has not been rendered as to
Plaintiff's claim for SSI benefits,[1] the Court does not address
herein Plaintiff's SSI claim.

     For the reasons that follow, the Court **AFFIRMS** the final
decision of the Commissioner that Plaintiff was not disabled
within the meaning of the SSA as of March 31, 2004 (the date

---

     [1] *See* the Court's Opinion and ordr (#37) issued September
21, 2012.

2  - OPINION AND ORDER

Plaintiff was last insured for purposes of DIB), and, therefore, Plaintiff is not entitled to DIB based on her 2007 application.

The Court emphasizes, as noted below, its decision is based on the medical record that existed on March 31, 2004. Accordingly, the Court has not considered the substantial medical record as to Plaintiff's physical and psychological impairments since that time which remains relevant to Plaintiff's still-pending claim for SSI.

## ADMINISTRATIVE HISTORY

On January 23, 2007, Plaintiff applied for DIB under Title II alleging she was disabled as a result of a curvature of the spine and affective/mood disorders.  Plaintiff's claim duplicates an earlier 2002 claim for DIB in which she asserts she had been disabled since July 1998.  For purposes of this Court's review, the parties agree the Commissioner made a final decision when he denied Plaintiff's 2007 DIB claim and that the 2007 DIB claim incorporates Plaintiff's original 2002 DIB claim.

On June 29, 2009, the ALJ held a hearing on Plaintiff's DIB application.  Plaintiff and a vocational expert (VE) testified. Tr. 20-50.

On July 23, 2009, the ALJ issued a decision that Plaintiff was not disabled for purposes of DIB during the relevant period and, therefore, is not entitled to those benefits.  Tr. 13-19.

On June 18, 2011, the Appeals Council denied Plaintiff's request for review.  Tr. 1-4.  Thus, consistent with the parties' agreement, the ALJ's July 23, 2009, decision as to Plaintiff's 2007 DIB claim is a final decision of the Commissioner for purposes of judicial review.  Tr. 13-15.

On April 22, 2011, Plaintiff filed her Complaint in this Court seeking review of the Commissioner's final decision.


**RELEVANT ADMINISTRATIVE RECORD**

**I.    Plaintiff's Testimony.**

As of the June 25, 2009, hearing, Plaintiff was 62 years old.  Tr. 28.  She is a high-school graduate.  Tr. 28.

Plaintiff was self-employed on and off for 20 years as an interior designer, mostly in the Bay Area.  Tr. 30.  In 1996 during that time-frame, Plaintiff was in an automobile accident. Tr. 28.  She moved to Portland in 2006.  Tr. 30.

Since 2006 Plaintiff has lived with her 90-year-old father and taken care of him.  Tr. 29.  Plaintiff drives her father to and from a senior center.  Plaintiff and her sister share tasks such as giving him baths, helping him get dressed, and moving him around, which is work that is both physically and emotionally exhaustng.  Tr. 35.  Plaintiff believes she would not be able to work in a nursing home eight hours a day doing the kinds of things she does for her father.  Tr. 36.  She has not

4 - OPINION AND ORDER

done any interior-design work since she moved to Portland.  Tr. 30.

Plaintiff asserts she is unable to work because she does not have the energy or motivation to do so in light of her responsibilities for taking care of her father and "dealing with life."  Tr. 31.  Although Plaintiff and her sister share the responsibility of caring for their father, it is still a full-time job for Plaintiff.  Tr. 31.

Plaintiff has degenerative disc disease and arthritis in her back and chronic lung congestion.  Tr. 32.  She also experiences long-term side-effects from radiation and chemotherapy treatments for Hodgkins Disease.  Tr. 32.  In the course of that treatment, she also underwent a splenectomy and laparotomy in addition to a mastectomy two months before the hearing.  Tr. 32.

Plaintiff has had neck pain since 1998 because of her scoliosis.  Tr. 33.  She also suffers from fibromyalgia.  Tr. 34.

At the 2009 hearing Plaintiff stated she was more disabled than she had been in the past because of the long-term effects of her condition and her age.  Tr. 39.

Plaintiff has been to emergency rooms six times over the years.  Tr. 40.  On bad days her pain level is about 7-8 on a 1-10 scale and 4 on good days.  Tr. 40.  If she is having a bad day, she puts off doing things such as paying bills.  Tr. 41.

Plaintiff describes herself as a reliable person, and,

therefore, she would try to show up for work on a bad day even if she were only capable of working at 60-70% capacity at best. Tr. 41.

## II.  **Lay-Witness Evidence**.

In March 2007 Plaintiff's sister reported she helps Plaintiff take care of their father and provides meals and does housekeeping for one hour a day.  Tr. 180.  Other than helping her father, Plaintiff's daily activities include eating, feeding and playing with the dogs, using the computer, and reading.  She is no longer able to walk or to stand for a long time or to focus on anything, and she has difficulty sleeping.  Tr. 181.

Plaintiff does not have any difficulty with personal grooming and remembers to take her medication.  Tr. 182.  She prepares frozen dinners and is able to do the laundry.  Tr. 182. She does little house or yard work because "repetitive movements hurt her neck and back."  Tr. 183.  She is able to handle money. Tr. 183.

Plaintiff's hobbies include computer research, emailing, reading, watching television, and playing with the dogs.  She "is not socially involved."  Tr. 184-85.

Plaintiff is "not supposed to lift over 10-15 lbs," and she is unable to stand, to walk, or to reach without pain.  Tr. 185. It takes her longer now to perform routine tasks.  She is able to walk "a few blocks," but then she has to rest for 10-15 minutes.

6 - OPINION AND ORDER

Tr. 185.

Plaintiff "gets along with everyone, but does not handle stress well." She is flexible to changes in routine. Tr. 186.

**III. <u>VE Testimony</u>.**

Based on the ALJ's hypothetical that characterized Plaintiff's prior work as an interior designer and furniture salesperson as past relevant work, the VE testified such work constituted skilled and semi-skilled, light-exertion jobs respectively. Tr. 45. Plaintiff also performed some work as a caregiver, which is a semi-skilled, medium job.

The VE opined if Plaintiff is able to engage in light exertional activities with occasional stooping, crouching, crawling, and kneeling; occasional climbing of ramps and stairs; and no climbing of ladders or exposure to vibration, she would be able to perform her past jobs as a furniture salesperson and interior designer. Tr. 46. If Plaintiff has psychological limitations that limit her to unskilled work and she has difficulty interacting with the public, the VE opined Plaintiff would not be able to perform those jobs. Tr. 46. Plaintiff, however, would still be able to perform light work relating to electronic assembly, extruder machine operator, and small-products assembly. Tr. 47.

The VE testified if Plaintiff's ability to concentrate and focus was impaired by 25% of the norm, Plaintiff would not

7 - OPINION AND ORDER

be competitive in the workforce.  The VE also testified if Plaintiff was not able to concentrate consistently because of pain and fatigue, she would not be employable.  Tr. 49.

## IV.  __Relevant Medical Record.__[2]

Plaintiff alleges her entitlement to DIB began on July 24, 1998.  As noted, she was last insured for purposes of DIB on March 31, 2004.  Tr. 15.  Plaintiff, therefore, must establish her disabling medical impairments existed before March 31, 2004.  *See Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1998).  Plaintiff's medical treatment during the relevant time-frame was at Kaiser Permanente.

In July 1995 an x-ray showed a marked left concave rotary scoliosis (curvature of the spine) with a narrowing of the L3-4 disc space and marginal spurs at that level.  Tr. 564.

In November 1996 chest x-rays showed degenerative changes at L3-4 and L4-5 and dextroscoliosis at L2.  Tr. 561.

In July 1997 Plaintiff was treated for fibromyalgia. Tr. 288-89.

In November 1997 Plaintiff complained her back "hurts all

---

[2] Plaintiff requests the Court to consider medical records relating to her 2010 treatment for heart problems and depression. Although such records are relevant to Plaintiff's 2007 SSI claim as to which, as noted, there is not yet a final decision by the Commissioner, they are not relevant to the pending 2007 DIB claim because they do not reflect Plaintiff's heart problems adversely affected her or required treatment before 2004, the date Plaintiff was last insured for purposes of DIB.

the time."  A chart note reflects Plaintiff had a history of Hodgkins Disease in her "early 20's."  Tr. 297.

In July 1998 Plaintiff complained of a migraine headache that was "resolving."  Tr. 307.

In November 1999 Plaintiff complained of falling down, dizziness, chest pain, and a bump on her lower back.  Tr. 310.

In June 1999 a chest x-ray revealed calcified lymph nodes in the left lung and thoracic scoliosis (curvature of the spine) on the right side.  Tr. 285.

In February 2000 Plaintiff was diagnosed with probable viral enteritis with stress and abdominal cramps/pain.  Tr. 314.

In November 2000 a radiology report reflected Plaintiff's degenerative changes in the lumbar spine.  Tr. 284.

In February 2002 a radiology report reflected Plaintiff had scoliosis of the thoracolumbar spine.  Tr. 363.

## **STANDARDS**

The initial burden of proof is on the claimant to establish disability.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005).  To meet this burden, a claimant must prove his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period

9 - OPINION AND ORDER

of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The
Commissioner bears the burden of developing the record.  *Reed v.
Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

The district court must affirm the Commissioner's decision
if it is based on proper legal standards and the findings are
supported by substantial evidence in the record as a whole.
42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec.
Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial
evidence means more than a mere scintilla, but less than a
preponderance, i.e., such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion."  *Robbins v.
Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal
quotations omitted).

The ALJ is responsible for determining credibility and
resolving conflicts and ambiguities in the medical evidence.
*Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  The
court must weigh all of the evidence whether it supports or
detracts from the Commissioner's decision.  *Robbins,* 466 F.3d
at 882.  The Commissioner's decision must be upheld even if
the evidence is susceptible to more than one rational
interpretation.  *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir.
2005).  The court may not substitute its judgment for that of
the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070
(9th Cir. 2006).

**DISABILITY ANALYSIS**

**The Regulatory Sequential Evaluation**

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. § 404.1521. Each step is potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). *See* 20 C.F.R. § 404.1521.

In Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 404.1521(a)(4(ii).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 404.1520(a)(4)(iii). The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404,

11 – OPINION AND ORDER

subpart P, appendix 1 (Listed Impairments).

     If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities that the claimant can still do on a regular and continuing basis despite her limitations.  20 C.F.R.§ 404.1520(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996).  Assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments.  An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'"  SSR 96-8p, at *4.

     In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 404.1520(a)(4)(iv).  Past relevant work is work involving "substantial gainful activity" within the past

15 years.  SSR 82-62.

If the Commissioner reaches Step Five, he must determine
whether the claimant is able to do any other work that exists
in the national economy.  *Stout*, 454 F.3d at 1052.  *See also*
20 C.F.R. § 404.1520(a)(4)(v).

Here the burden shifts to the Commissioner to show a
significant number of jobs exist in the national economy that the
claimant can perform.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th
Cir. 1999).  The Commissioner may satisfy this burden through the
testimony of a VE or by reference to the Medical-Vocational
Guidelines set forth in the regulations at 20 C.F.R. part 404,
subpart P, appendix 2.  If the Commissioner meets this burden,
the claimant is not disabled.  20 C.F.R. § 404.1520(g)(1).

## THE ALJ'S FINDINGS

In Step One, the ALJ found Plaintiff has not engaged in
substantial gainful activity from July 24, 1998, through
March 31, 2004, her date last insured.  Tr. 15.

In Step Two, the ALJ found Plaintiff had severe impairments
through March 31, 2004, related to scoliosis, degenerative disc
disease, and depression.  Tr. 15.

In Step Three, the ALJ found Plaintiff's impairments do not
meet or equal any listed impairment.  For purposes of her DIB

13 - OPINION AND ORDER

claim, the ALJ found Plaintiff has the RFC to perform less than a full range of light work with the capability to lift and to carry 10 lbs frequently and 20 lbs occasionally; to stand, to walk, and to sit for up to six hours in an eight-hour workday; occasionally to stoop, crouch, crawl, kneel, and to climb ramps and stairs, but never ladders; and should avoid concentrated exposure to vibration.  Tr. 17.

Based on these findings, the ALJ concluded Plaintiff is capable of performing past relevant work as an interior designer and furniture salesperson, which Plaintiff had performed before the alleged onset of her disability in 1998.  Tr. 19.  The record also reflects Plaintiff performed those jobs within 15 years of her date last insured in March 2004.

Based on his findings, the ALJ found Plaintiff was not disabled and, therefore, is not entitled to DIB.  Tr. 19.

**DISCUSSION**

Plaintiff alleges the ALJ erred in his disability findings as follows:  (1) by failing to give adequate consideration to the lay evidence of Plaintiff's sister; (2) by failing to find at Step 2 of his evaluation that Plaintiff has a severe impairment relating to fibromyalgia; (3) by failing to consider new evidence relating to Plaintiff's congestive heart failure, which was presented to the Appeals Council; (4) by erroneously analyzing

14 – OPINION AND ORDER

Plaintiff's past work history as past relevant work and, as a result, erroneously finding Plaintiff was not disabled under the Medical-Vocational Guidelines; and (5) by failing to analyze adequately Plaintiff's mental impairments in conjunction with her physical impairments to determine whether they meet Listed Impairment 12.04 when considered together.

**I.    The ALJ's Consideration of Lay Evidence.**

In a March 2007 report Plaintiff's sister described Plaintiff's daily activities and limitations associated with Plaintiff's alleged impairments.  The report does not provide any time-frame for the Court to determine whether the limitations described existed on or before March 31, 2004, the date Plaintiff was last insured for purposes of DIB.

Accordingly, while such evidence may well be probative of the 2007 SSI claim, which is not presently before the Court, the record does not support a conclusion that such evidence is probative of Plaintiff's 2007 DIB claim.  The Court, therefore, concludes the ALJ did not err when considering the lay evidence.

**II.   The ALJ's Finding as to Fibromyalgia**.

In the hundreds of pages of medical records in this case, there is a solitary reference to fibromyalgia.  Tr. 293.  The ALJ also noted "treatment records do not reveal that [Plaintiff] has undergone any trigger point evaluations or received an actual diagnosis of fibromyalgia."  Tr. 18.

On this record the Court concludes the ALJ did not err when he found at Step 2 that Plaintiff did not suffer from the severe impairment of fibromyalgia on or before March 31, 2004.

**III. <u>Consideration of New Evidence - Congestive Heart Failure</u>.**

As noted, the medical record reflects Plaintiff was treated for congestive heart failure in 2010. This evidence was presented for the first time to the Appeals Council. Although this evidence may be probative as to Plaintiff's 2007 SSI claim, it is not probative as to Plaintiff's 2007 DIB claim in the absence of some evidence that Plaintiff has suffered from, was treated for, or otherwise was diagnosed with a heart impairment before

March 31, 2004. Plaintiff has not cited to any such medical evidence and the Court has not found any in the record.

Accordingly, the Court concludes on this record that the ALJ did not err when he did not consider the recent 2010 medical evidence relating to congestive heart failure because that evidence is not relevant to Plaintiff's 2007 DIB claim.

**IV. <u>Past Relevant Work</u>.**

Plaintiff contends the ALJ erred when he found Plaintiff's former job as a furniture salesperson and as a self-employed interior designer constituted past relevant work that Plaintiff was capable of performing notwithstanding her limitations.

Defendant has not responded to the specific issues raised by Plaintiff as to the ALJ's findings regarding Plaintiff's past relevant work.

**A.  Furniture Salesperson.**

As noted, past relevant work is work involving "substantial gainful activity" within the past 15 years.  SSR 82-62.  The Court concludes the ALJ's Step Three finding that Plaintiff's work history includes "past relevant work as a furniture salesperson" is not supported by substantial evidence in the record because the record does not reflect the ALJ made any finding that such work as performed by Plaintiff constituted substantial gainful activity.

**B.  Interior Designer.**

Plaintiff asserts her self-employment as an interior decorator required significant public contact, but her RFC as evaluated by the ALJ limits her to only occasional public contact.  In addition, Plaintiff asserts the ALJ erred when he did not address SSR 83-34 pertaining to self-employed individuals to determine whether Plaintiff engaged in substantial gainful activity in that job so that it qualifies as past relevant work. Plaintiff also contends the ALJ did not consider whether Plaintiff's impairments relating to limitations of social functioning and maintaining concentration, persistence, and pace, would preclude such employment in the future.  Specifically,

Plaintiff argues the ALJ's finding that her prior self-employment as an interior designer constitutes past relevant work did not take into account the opinion of Luke Patrick, Ph.D., that Plaintiff suffers from depression, which impairs her ability to maintain concentration, persistence, and attention.  Tr. 512. Dr. Patrick, however, evaluated Plaintiff during a March 2007 psychodiagnostic examination, which was three years after her last insured date for purposes of her 2007 DIB claim.

Accordingly, the Court concludes, in the absence of other substantial evidence that establishes Plaintiff had severe psychological impairments on or before March 31, 2004, Dr. Patrick's evaluation has little probative value as to whether Plaintiff had the ability to engage in substantial gainful activity during the relevant period.

## V.    <u>Disability under Listed Impairment 202.04.</u>

Plaintiff asserts she is disabled within the meaning of Listed Impairment 202.04, which provides that a 55-59 year-old person who is limited to light work and who has an unskilled work history is disabled.

Plaintiff was 55 years old in 2002, two years before her date last insured.  The ALJ found she was limited to "less than the full range of light work."  Thus, Plaintiff would be considered disabled under Listed Impairment 202.04 if she had a history of unskilled work.  The VE, however, testified

Plaintiff's work performed fifteen years earlier as a furniture salesperson was a semi-skilled job and as a self-employed interior designer was a skilled job.

Accordingly, the Court concludes on this record that Listed Impairment 202-04 does not apply to Plaintiff because neither one of her jobs was unskilled.

In summary, the Court concludes Plaintiff's medical record as of March 31, 2004, does not establish that Plaintiff was disabled for purposes of DIB before that date.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's final decision denying Plaintiff's claim for DIB before March 31, 2012, the date she was last insured for such benefits.

IT IS SO ORDERED.

DATED this 25th day of September, 2012.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United states District Judge

19 - OPINION AND ORDER